IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BSG CLEARING SOLUTIONS NORTH AMERICA, LLC, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. 5:17-cv-1093-DAE |
| REGIONAL COMMERCE SERVICES, LLC, *et al.*, | § § § § | |
| *Defendants*. | § § § | |

## AFFIDAVIT OF BRIDGET A. MIMARI

| | |
|---|---|
| STATE OF TEXAS | § § |
| COUNTY OF BEXAR | § |

Before me, the undersigned notary, on this day personally appeared Bridget A. Mimari, the affiant, a person whose identity is known to me. After I administered an oath to affiant, affiant testified:

1. My name is Bridget A. Mimari. I am over 18 years of age, of sound mind, and capable of making this affidavit. I am General Counsel at Plaintiff BSG Clearing Solutions North America, LLC which is the parent company of Plaintiff Billing Concepts, Inc. The two companies will be referred to, collectively, herein as "BSG."

2. The facts stated in this affidavit are within my personal knowledge and are true and correct. I have personal knowledge of these facts and, if called to testify as a witness, could and would testify competently thereto.

3. I make this affidavit in support of Memorandum in Support of Motion for Default Judgment to which this affidavit is attached (the "Motion").

4. I have read the complaint filed in this action and know the contents of it, and that it is true of my own knowledge.

5. BSG provides billing and collection clearinghouse services to the telecommunications industry. As a clearinghouse, BSG processes and distributes electronic billing information and payments between: (a) Service Providers who sell products or services to consumers, and (b) the local exchange carriers ("LECs") who collect the charges on behalf of Service Providers by adding them to the consumer's monthly landline telephone bill. In simplified terms, BSG collects consumer data ("Billing Records") from the Service Providers, then sorts and distributes the Billing Records to specific LECs with which each consumer has its telephone service. The LECs collect payments from consumers when the consumers pay their telephone bill, then remit the funds attributable to the Billing Records (in most instances, less the respective LECs' fees) to BSG. BSG finally distributes the funds received from the LECs (less BSG's fees) to the appropriate Service Providers. The billing and collection process grows more complex once variables for consumer payment delays, payment disputes, adjustments, credits, refunds, and other expenses are added to the equation.

6. BSG requires Service Providers, like Defendants in this matter, to enter into Call Record Processing and Information Management Services Agreements ("Services Agreements") before billing and collecting through Local Exchange Carriers ("LECs"). Every Services Agreement has numerous vigorous indemnity and reserve provisions to protect BSG and its related companies from losses and damages arising from the billing and collection process. Specifically, the Services Agreements contain identical provisions: (a) obligating the Service Providers for any

chargebacks, offsets, bad debt reserves and other assessments associated with processing the Service Provider's Billing Records; (b) authorizing BSG to withhold funds from the Service Provider as reserves against any and all such charges; and, (c) protecting BSG against any and all liability that may be associated with processing a Service Provider's Billing Records. When Service Providers sign the Services Agreements, they unequivocally grant BSG the authority and power to charge them for any and all charges BSG may incur that may be attributable to their Billing Records.

7. Beyond the numerous indemnity provisions Service Providers (including Defendant Digital Service Group ("DSG") accept when executing Services Agreements with BSG, Service Providers grant BSG broad discretion to accept, pay, and allocate charges on behalf of the Service Provider even when those charges cannot be attributed to a specific Service Provider.

8. The Services Agreements also require Service Providers (including DSG) to certify their Billing Records, or represent to BSG that consumers have authorized and approved the imposition of charges on their local telephone bill. If this representation is found to be untrue, the Service Provider is liable for the resulting damage; and, BSG can offset any costs or expenses it incurs as a result against payments to the Service Provider and sue to collect if the Service Provider's account balance(s) are negative.

9. In April 2009, two putative class action cases were filed – *Nwabueze, et al. v. AT&T, et al.*, Case No. 09-CV-1529, and *Moore v. Verizon, et al.*, Case No. 09-CV-1823 – in the Northern District of California (the "Class Actions") in which consumers alleged they were improperly billed for products or services that the line-subscribing consumer did not authorize, a practice generally referred to as "cramming." The LECs named as Defendants in the Class Actions demanded that BSG (and other clearinghouses) indemnify the LECs for their proportionate share

of the consumer liability that may be assessed as well as any expenses and charges the LECs incur as a result of the Class Actions. BSG notified the Service Providers and required them to indemnify BSG for the Service Providers' proportionate share of the consumer liability and Class Action fees and charges the LECs imposed upon BSG.

10. Effective August 27, 2012, AT&T no longer accepted third-party billing for "enhanced services," which are non-traditional telecommunication services. Verizon followed suit on November 20, 2012. BSG advised its customers of these developments; and, as the LECs ceased accepting charges for enhanced services in late 2012, so did BSG. The cessation of billing and collection for enhanced services meant there were limited funds against which the LECs (and BSG) could secure themselves against potential consumer liability and the fees, costs, and expenses attributable to the Class Actions. In fact, once billing stopped, there were no funds available to be used as security. At that point, the Service Provider is no longer processing Billing Records through BSG and, consequently, BSG must vigilantly protect against the Service Provider's account dropping into the negative, exposing BSG to greater liabilities as a result of having processed the Billing Records for that customer, and leaving BSG without recourse for unsatisfied balances. The only recourse the LECs and BSG had to protect against the potential liability arising from consumers submitting claims in the Class Actions were the Billing Records already in the process of collection.

11. In 2013, the Class Actions were settled and released upon conditions that include issuing refunds to consumers for up to 100% of the allegedly unauthorized charges through an extensive claims administration process, payment of class counsel's fees, incentive awards to the class representatives, and the LECs' payment of all costs of notice and administration of the settlements. The claims administration process in both Class Actions involved consumers

submitting claims which are subject to a limited number of challenges by the LECs, clearinghouses, and service providers, and a final rebuttal afforded to the consumers. The claims submission process in both Class Actions has closed, but the claims administration procedures are ongoing.

12. In both Class Actions, consumers submitted claims asserting that virtually all Service Providers (including DSG) had placed charges on consumers' end-user bills that were not authorized. BSG timely challenged certain of these claims, where able, and some claimants have filed rebuttals in response. These are the consumer claims that have been submitted to the Settlement Administrators; many of these claims are still under review due to challenges and rebuttals. While the rebuttals have been adjudicated by the Settlement Administrator in the *Moore v. Verizon* Class Action, the rebuttals filed in the *Nwabueze v. AT&T* Class Action remain under consideration. BSG does not know how many of those consumer claims will be sustained in the claims administration process.

13. Consistent with BSG's Services Agreements with Service Providers, BSG offsets and deducts fees, charges, and expenses BSG incurs a result of processing Billing Records for a Service Provider from the account balances otherwise payable to the Service Provider. The same practice has been applied to the fees, charges, and expenses arising out of the Class Actions.

14. Starting with the dollar amount of the initial claim by an end-user consumer against a Service Provider (the "Claim"), the Settlement Administrators adjust the Claim according to the limited challenges allowed by the Class Action settlement terms (the "Net Claims").[1] The Net

---

[1] "Net Claims" take into consideration BSG's challenges to claimants' claims and therefore include the total dollar amount of claimants' claims minus BSG's challenge amount. However, because the Settlement Administrators have yet to adjudicate BSG's challenges, it is unclear whether BSG's challenges will be upheld. The Court should note that BSG had no contractual obligation to make any challenges to end-user claims but did so on behalf of its Service Provider clients as a matter of equity.

Claims are charged directly to the specific Service Provider that prompted the Claim (the "Direct Expenses"). By way of example, an end-user consumer submits a Claim in the Class Action asserting that the consumer's land-line telephone bill showed a charge associated with DSG. If the Claim is unchallenged, then a LEC pays the end-user's Claim through the claims administration process, and BSG charges the same amount directly to DSG. A Direct Expense arises where BSG receives both the dollar amount of the Claim and the name of the specific Service Provider.

15. Class Action-related expenses, such as the claims administrator fees, postage and notice charges, and legal fees (the "Shared Expenses"), cannot be directly attributed to a specific Service Provider and are shared among all Service Providers against whom Net Claims are charged as Direct Expenses. BSG allocates Shared Expenses proportionately. First, Shared Expenses are allocated to each product (long distance, operator services, and enhanced services) based on each product group's percentage of the total amount of Net Claims. Second, Service Providers within each product group are allocated the Service Provider's proportionate percentage of the Shared Expenses based on the respective Service Provider's Net Claims percentage to the total Net Claims of that product group.

16. Account balances for the "Digital Service Group" accounts as of December 30, 2014 were as follows:

| Entity | Reported Balance |
| --- | --- |
| 002633 - Digital Service Group | -$134.45 |

17. In the Class Action, consumers submitted claims asserting that Digital Service Group's charges were not authorized (the "Direct Expenses"). As of March 27, 2018, consumers submitted claims against Digital Service Group as follows:

| Entity | AT&T Claims | Verizon Claims | Total Amount of Claims (Direct Expenses) |
|---|---|---|---|
| 002633 - Digital Service Group | $24,055.30 | $2,928.17 | $26,983.47 |

18.     BSG timely challenged several of these claims, and some claimants filed rebuttals in response. As shown below, Digital Service Group account balances ultimately became negative by more than $83,000 after taking into account not only the Direct Expenses of end user claims filed against them as well as the associated Challenge Fees (shown in the chart directly below), but also after the allocation of shared class action expenses, claims administration fees, class counsel fees, technical charges, and defense counsel fees.

| Entity | AT&T Challenge Fees | VZ Challenge Fees | Total Challenge Fees |
|---|---|---|---|
| 002633 - Digital Service Group | $156.86 | $0.00 | $156.86 |

19.     In addition to the Direct Expenses and liability attributable to the unauthorized Billing Records charged to consumers by or on behalf of Digital Service Group, Digital Service Group is also responsible to pay and is liable for the fees and expenses incurred by the LECs pursuant to the services agreements. As of June 30, 2016,[2] AT&T has paid out costs and claims of approximately $15.7 million for the Class Action fees and expenses caused by billing records submitted by BSG on behalf of Service Providers, including Digital Service Group. The $15.7 million attributable to the *Nwabueze* case included class counsel fees, the claims administration fees, and other expenses incurred by AT&T. As of June 30, 2016, Verizon likewise has paid out $7.13 million for its Class Action costs, claims and expenses. While these allocations were

---

[2] These are the most current figures available from AT&T. These costs will continue to increase until the Class Action's claim administration process is completed.

calculated in June 2016, BSG has continued to incur additional expenses and costs associated with these Class Actions which have not yet been allocated to the Service Providers (including Digital Service Group); thus, the amount of money Digital Service Group owes to BSG will only continue to grow.

20. As AT&T and Verizon allocated expenses to BSG and the other billing aggregators involved in the Class Action, so has BSG allocated its share of those expenses amongst the Service Providers whose Billing Records prompted claims from consumers that were sustained during the Class Action claims administration process. Class Action-related expenses, such as the claims administrator fees, technical expenses, postage and notice charges, and legal fees (the "Shared Expenses"), cannot be directly attributed to a specific Service Provider and are shared among all Service Providers against whom Claims are charged as Direct Expenses. BSG allocates Shared Expenses proportionately and equitably as approved by the United States District Court Western District of Texas San Antonio Division in *Better Benefits Organization, Inc. v. BSG Clearing Solutions North America, LLC* (Case 5:14-CV-00242-JWP).

21. First, Shared Expenses are allocated to each product (long distance, operator services, and enhanced services) based on each product group's percentage of the total amount of "Net Claims" (Net Claims = Gross Claims minus Challenged Claims). Second, Service Providers within each product group are allocated the Service Provider's proportionate percentage of the Shared Expenses based on the respective Service Provider's Net Claims percentage to the total Net Claims of that product group.

22. Following this allocation formula, as of March 27, 2018, the following expenses have been allocated to Digital Service Group with respect to the AT&T and Verizon Class Actions (and are owed to BSG):

| Entity | AT&T Expense Allocation | VZ Expense Allocation | Total Expense Allocation |
|---|---|---|---|
| 002633 - Digital Service Group | $47,906.85 | $5,057.97 | $52,964.82 |

23. The inclusion of the allocable fees and expenses from the Class Actions has increased Digital Service Group's net deficit – money owed to BSG – to $83,835.17. This figure is calculated by taking -$134.45 (Digital Service Group's account balance at December 30, 2014), minus $26,983.47 (total Claims), minus $156.86 (total Challenge Fees), and minus $52,964.82 (total expense allocation from the table immediately above).

24. In addition to the LEC's fees and expenses, BSG has also incurred its own expenses associated with the Class Action, including attorneys' fees, for which Digital Service Group (and other Service Providers) owe BSG indemnity. As of September 30, 2016, BSG's fees and expenses were $301,216 attributable to the AT&T Class Action and $633,581 attributable to the Verizon Class Action[3]. Applying the same percentage allocations to each Digital Service Group entity as was applied to the AT&T Shared Expenses, Digital Service Group's allocable fees and expenses are:

| Entity | AT&T Fee Allocation | VZ Fee Allocation | Total Fee Allocation |
|---|---|---|---|
| 002633 - Digital Service Group | $740.00 | $326.00 | $1,066.00 |

25. Once BSG's attorneys' fees and expenses are included in the formula, and an additional $2,529.57 in ongoing business as usual dilution and fees were accounted for, Digital Service Group's total deficit to BSG equals $83,835.17 as reflected in the chart of current account balances as of March 27, 2018 directly below:

---

[3] Again, this number will be updated in full at the completion of the Class Action and allocated accordingly, thereby rendering these account balances further negative.

| Entity | Reported Balance |
|---|---|
| 002633 - Digital Service Group | -$83,835.17 |

26. This $83,835.17 deficit owed to BSG remains outstanding.

27. There is now due by Defendant Digital Service Group to the Plaintiffs on the liability set forth in the complaint the sum of $83,835.17.

28. Defendant has been defaulted for failure to appear in this action.

FURTHER AFFIANT SAYETH NOT.

_____
Bridget A. Mimari

SWORN TO AND SUBSCRIBED before me on May 24th, 2018.

AMY ATKINS
Notary Public, State of Texas
Comm. Expires 04-10-2021
Notary ID 129383362

_____
Notary Public, State of Texas

My Commission Expires: 4/10/2021